**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 06 C 4859 |
| | : | Judge Robert W. Gettleman |
| AA CAPITAL PARTNERS, INC., and JOHN A. ORECCHIO, | : | |
| | : | |
| Defendants. | : | mc 06 - 174 |

**AGREED ORDER APPOINTING RECEIVER**
**OVER AA CAPITAL PARTNERS, INC.**

This cause coming to be heard on Plaintiff Securities and Exchange

Commission's Emergency Motion for Appointment of a Receiver Over AA Capital

Partners, Inc. ("AA Capital"), the Court having heard the arguments of counsel, by

agreement of the parties and based on the evidence submitted by the Commission, the

Court hereby orders that:

I.

The Securities and Exchange Commission's Emergency Motion for Appointment

of a Receiver is granted.

II.

A.    W. Scott Porterfield of Chicago, Illinois is appointed the receiver

("Receiver") over AA Capital.

B.    The Receiver shall have the following powers and duties to fulfill his obligations:

1.    Oversee all aspects of the operations of AA Capital with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers, and other property belonging to or in the possession of or control of AA Capital.

2.    Have access to, collect, and take custody, control, possession and charge of all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property (hereinafter referred to as "Receivership Property") belonging to or in the possession of or control of AA Capital, and any of their subsidiaries or affiliates (hereinafter referred to as "AA Capital"), with full power to sue, foreclose, marshal, sell, liquidate, collect, receive, and take possession of such property.

3.    Have control of and be added as the sole authorized signatory for AA Capital, its subsidiaries and affiliates, including for all accounts over which AA Capital and any of its officers, employees or agents have signatory authority, at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of AA Capital, or which maintains accounts over which AA Capital and/or any of its officers, employees or agents, have signatory authority.

2

4.   Use reasonable efforts to determine the nature, location, and value of all assets and property belonging to, owned by, or in possession of AA Capital.

5.   Use reasonable efforts to determine the identity of all advisory clients, amounts invested by the advisory clients, and payouts to advisory clients and communicate, as necessary, with the advisory clients.

6.   Engage and employ the law firm of Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLP, as well as other professionals ("Retained Personnel") to assist in carrying out his duties. These Retained Personnel may include as needed, but are not limited to, forensic accountants, ERISA consultants, and a possible substitute adviser. When selecting ERISA consultants or a possible substitute adviser, the Receiver should consult with and consider the input of counsel for AA Capital's advisory clients.

7.   Take such action as necessary and appropriate to prevent the dissipation or concealment by AA Capital or its affiliates of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets;

8.   The Receiver shall have the authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Northern District of Illinois, concerning any subject matter relating to the identification, preservation, collection and/or liquidation of AA Capital assets.

9.    The Receiver may bring and/or defend such legal actions based on law or equity in any state, federal, or foreign court as he deems necessary or appropriate in discharging his duties as Receiver.

10.    The Receiver shall have the authority to spend money of AA Capital in furtherance of ongoing business to preserve and prevent the dissipation of assets over which AA Capital and any of its employees or agents, have signatory authority, at any bank, title company, escrow agent, financial institution or brokerage firm which has possession, custody or control of any assets or funds of AA Capital, or which maintains accounts over which AA Capital and/or any of its officers, employees or agents have signatory authority.

11.    The Receiver shall have access to and monitor all mail of AA Capital in order to review such mail that he deems relates to the business of AA Capital and the discharging of his duties as Receiver.

12.    All AA Capital employees will be retained until such time as the Receiver makes an affirmative decision to the contrary. The Receiver shall have the authority to order the immediate termination of any AA Capital employee if the Receiver has any concerns regarding an employee's: (a) competence, or (b) integrity. However, if the Receiver decides to terminate an AA Capital employee for any other reason, the Receiver will provide the employee with at least two days written notice, so that if the affected employee desires, he or she may contest the Receiver's decision before the Court. This notice provision does not create a right to employment for, or modify the current at-will employment status of any AA Capital employee.

4

C.    The Receiver shall file an inventory of all property and assets in his possession or in the possession of others who hold possession as his agent, and in a separate schedule, an inventory of the property and assets of the estate not reduced to possession by him but claimed and held by others within thirty (30) days of his appointment as Receiver.

D.    Within thirty (30) days after the filing of the inventory, and at regular intervals of not less than three (3) months thereafter until discharged, the Receiver shall file reports of his acts and transactions in his official capacity as Receiver.

E.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from AA Capital's assets. Such compensation shall be in amounts commensurate with the services performed by the Receiver and Retained Personnel and shall be subject to the approval of the Court. The Receiver and Retained Personnel shall apply to the Court for such compensation and expense reimbursements on a monthly basis, and such amounts shall be paid, in the first instance, from AA Capital's assets. If these assets are not sufficient to pay the Receiver's fees, for good cause shown, the Court may order that the Receiver be paid from assets managed by AA Capital.

F.    The Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary duties and obligations in this matter unless and until this Court so orders.

G.    The Receiver and Retained Personnel are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall

the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of malfeasance, bad faith, gross negligence, or in reckless disregard of their duties. Nothing in this provision is intended to provide a defense against liability for any actions taken by AA Capital or its personnel prior to the appointment of the Receiver.

H.    The Receiver shall establish one or more bank account(s), in his discretion, to deposit any funds the Receiver may recover. The Receiver shall use such funds for any legitimate purpose consistent with the Receiver's powers and duties and this Order, including paying fees and expenses of the Receiver and Retained Personnel, as approved by the Court.

I.    AA Capital and its owners, partners, officers, directors and employees, and any other persons who are in custody, possession or control of any assets, collateral, books, records, papers or other property of AA Capital, are ordered to provide access to and control of such property to the Receiver.

J.    AA Capital and its respective employees are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver. However, this requirement does not impinge on the rights of AA Capital or the rights of any of its employees to assert any applicable privilege.

K.    The Receiver shall control the assertion and/or waiver of AA Capital's attorney-client privilege for the duration of this receivership. Counsel for AA Capital

need not conduct any privilege review before responding to the Receiver's requests for documents and/or information.

  L. All investors, advisory client, creditors, and other persons, and all others acting on behalf of any such investor, creditor or other persons, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys, are stayed from:

    1. Enforcing or executing any judgment or order obtained against AA Capital's property;

    2. Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any property owned by or in the possession AA Capital or the Receiver wherever situated;

    3. Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement with AA Capital or any entities controlled by AA Capital; and

4.     Doing any act to interfere with the taking control, possession, or management, by the Receiver, of AA Capital's property and assets owned, controlled, or in the possession of the Receiver, or to in any way interfere with or harass the Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over AA Capital's property.

Dated: September _13_, 2006

**SO ORDERED:**

_____
**United States District Court Judge**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES<br>AND EXCHANGE COMMISSION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CASE NO.   06  C 4859 |
| | : |
| AA CAPITAL PARTNERS, INC., and<br>JOHN A. ORECCHIO, | : |
| | : |
| | : |
| Defendants. | : |
| | : mc  06 - 174 |

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"), alleges as

follows:

## NATURE OF THE ACTION

1.     The Commission brings this emergency enforcement action to halt ongoing fraudulent

conduct by the defendants, AA Capital Partners, Inc. ("AA Capital"), an investment advisory firm

registered with the Commission, and its President and co-owner, John A. Orecchio ("Orecchio").  AA

Capital is the investment adviser for a number of union pension funds for which it manages more than

$194 million.  Of these funds, more than $60 million are in cash in bank accounts which AA Capital

controls.  From May 2004 to the present, AA Capital and Orecchio defrauded AA Capital's investment

advisory clients by misappropriating at least $10.7 million from their accounts and using the money as

their own.  Of these funds, AA Capital kept and used at least $5 million to pay its business expenses.  In

addition, Orecchio and AA Capital transferred at least $5.7 million to accounts designated by Orecchio,

including those of a horse farm in Michigan and of a company that manages a "strip club" in Detroit.

2.      In addition to its fraudulent conduct, AA Capital Partners has failed to make and keep the books and records required of it by its registration with the Commission.

3.      Through the activities alleged in this complaint, defendant AA Capital has, and unless enjoined, will continue to, directly or indirectly, engage in transactions, acts, practices or courses of business which are violations of Sections 204, 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-4, 80b-6(1), 80b-6(2) and 80b-6(4)] and Rules 204-2(a)(1), 204-2(a)(2), 204-2(a)(6), and 206(4)-4 thereunder [17 C.F.R. §§ 275.204-2(a)(1), 275.204-2(a)(2), 275.204-2(a)(6)and 275.206(4)-4].

4.      Through the activities alleged in this complaint, defendant Orecchio has, and unless enjoined, will continue to, directly or indirectly, aid and abet AA Capital's violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] .

## JURISDICTION

5.      This Court has jurisdiction pursuant to Sections 209(d), 209(e) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e) and 80b-14].

6.      Defendants, directly or indirectly, have made and are making use of the mails or the means or instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein.

7.      There is a reasonable likelihood that the defendants will, unless enjoined, continue to engage in the transactions, acts, practices, and courses of business set forth in this complaint and transactions, acts, practices, and courses of business of similar purport and object.

## THE DEFENDANTS

8.     AA Capital is a Delaware corporation with its principal place of business in Chicago,

Illinois. AA Capital is an investment adviser registered with the Commission since April 8, 2002. AA

Capital is owned by Orecchio, and Paul Oliver, Jr. ("Oliver"), who is its Chairman and a Managing

Director.

9.     Orecchio, age 40, is a resident of Arlington Heights, Illinois. Orecchio owns 50% of AA

Capital. Since April 2002, Orecchio has been AA Capital's President and a Managing Director.

Orecchio primarily solicited prospective clients for AA Capital, but also helped run several private

equity funds which AA Capital manages for its pension fund clients.

## AA CAPITAL'S INVESTMENT ADVISORY BUSINESS

10.     AA Capital is a relatively small investment advisory firm that specializes in providing

investment advisory services to union pension funds. AA Capital currently manages approximately

$194 million for six different union pension funds.

11.     AA Capital principally invests its clients' assets in several private equity funds managed

by affiliates of AA Capital. As of July 31, 2006, AA Capital's affiliated private equity funds hold

approximately $126 million in client funds.

12.     AA Capital also maintains bank accounts for its advisory clients which it calls client trust

accounts. As of July 31, 2006, these client trust accounts held approximately $68 million in cash

deposits. AA Capital's contracts with its advisory clients give it full discretionary authority to withdraw

cash from these client trust accounts.

13.     AA Capital's contracts with its advisory clients provide that it earns a fee of up to 2% of

the assets under management for managing the client's assets. In addition, the principals of AA Capital

(including Orecchio and Oliver) have equity interests in the affiliated private equity funds through

general partnerships in which they are partners. Through these general partnerships, the principals of AA Capital may earn a share of the returns generated in the affiliated private equity funds provided that those returns exceed a threshold agreed upon in its contracts with AA Capital's clients.

14.    AA Capital is in extremely poor financial shape, with liabilities far exceeding its present assets. According to draft financial statements prepared by AA Capital, its 2005 revenues totaled $2,018,585, while its expenses for the period totaled $7,151,605. Accordingly, it had a 2005 operating deficit of more than $5 million. According to AA Capital's draft financial statements, it spent more than $4.4 million on salaries in 2005, or more than twice the firm's revenues. Payments AA Capital made to Orecchio for his salary are included in this amount. According to Orecchio's 2005 W-2, AA Capital paid Orecchio at least $1.1 million in wages, tips or other compensation in 2005.

15.    As a registered investment adviser, AA Capital was required to make and keep true, accurate and current books and records relating to its investment advisory business, including the following:

    a.   a journal or journals, including cash receipts and disbursements, records, and any other records of original entry forming the basis of entries in any ledger;

    b.   general and auxiliary ledgers (or other comparable records) reflecting asset, liability, reserve, capital, income and expense accounts; and

    c.   all trial balances, financial statements, and internal audit working papers relating to the business of such investment adviser.

## DEFENDANTS' MISAPPROPRIATION OF CLIENT FUNDS

16.    Under its contracts with its clients, AA Capital is authorized to transfer a certain amount on a periodic basis from its client trust accounts to AA Capital's operating account.

17.     However, AA Capital does not transfer client funds to its own account solely based on its contractual entitlement to the funds. Instead, AA Capital transfers funds from its client trust accounts to its operating account to fund whatever activities and expenses it or Orecchio deems appropriate.

18.     In 2004, Orecchio approached AA Capital's Chief Financial Officer, Mary Beth Stevens ("Stevens"), and directed her to have AA Capital reimburse him for his personal tax liabilities. Stevens reported to Orecchio as AA Capital's President. Orecchio told Stevens that the reimbursement was necessary because of a miscalculation of taxes he owed relating to at least one of AA Capital's affiliated private equity funds.

19.     Under Orecchio's direction, between May 2004 and October 2005, AA Capital withdrew at least $5.7 million from its client trust accounts in more than 20 separate installments and deposited those funds into its operating account. From there, Orecchio directed Stevens to send the client funds to various other accounts that he designated. Among these accounts are those of a horse farm in Michigan called M & J Animal Rescue, L.L.C. ("M & J"), and Orecchio's company, Lonyo, L.L.C. ("Lonyo"), which purportedly manages a Detroit "strip club." Neither business is related to investment advisory services AA Capital provides to its clients.

20.     In addition to the above, during 2005, AA Capital misappropriated at least an additional $5 million from its client trust accounts as a way to cover the shortfall between what it earned and what it spent. AA Capital withdrew these funds from its client trust accounts, deposited them into its operating accounts and used them to pay the expenses of running its business.

21.     Neither AA Capital nor Orecchio had the authority to use client funds as alleged above. In addition, AA Capital has not adequately disclosed the client trust account withdrawals to its clients.

22.    AA Capital and Orecchio have attempted to conceal their misappropriations by characterizing them as "loans." However, Stevens has admitted that neither Orecchio nor AA Capital entered into loan agreements with AA Capital's clients reflecting the purported loans.

23.    In addition, however AA Capital and Orecchio characterized the misappropriations from the client trust accounts, the withdrawals alleged above were not disclosed to AA Capital's clients as loans. Instead, AA Capital misrepresented the nature of the withdrawals to its clients by sending them monthly account statements that falsely characterized the withdrawals as "capital calls."

24.    Stevens knew of the above misappropriations from their inception in 2004, as she was responsible for diverting client funds to AA Capital's operating account. Oliver learned of Orecchio's personal diversion of client funds in the summer of 2004.

25.    Oliver, Stevens and Orecchio met in February 2006 to discuss AA Capital's financial condition and the need to reduce the firm's expenses. Oliver knew that AA Capital had misappropriated at least $5 million to cover operating expenses no later than February 2006. Oliver knew that Orecchio had diverted at least $5.7 million in client funds to himself no later than early 2006.

26.    Thus far in 2006, Orecchio has submitted for payment by AA Capital more than $4.3 million in requests for reimbursement for travel and entertainment expenses. Such expenses have included $1 million for political contributions, hundreds of thousands of dollars for private plane rentals, and $120,000 to entertain clients at the Super Bowl. AA Capital is unable to determine which of these expenses can be charged to its clients because it does not have current books and records for 2006.

27.    During 2006 and despite AA Capital's officers and directors' knowledge of the misappropriations of client funds alleged above and their knowledge of AA Capital's extremely poor financial condition, AA Capital has paid more than $2 million to payees designated by Orecchio,

purportedly in lieu of payment for some of his travel and entertainment expenses reimbursement. These payments include payments by AA Capital of more than $1 million to Lonyo and $610,000 to M & J.

28.     On August 31, 2006, and only after the Commission's staff raised with AA Capital the misappropriations set forth above, AA Capital suspended Orecchio and purportedly cut off his access to its clients' funds. According to Oliver, AA Capital suspended Orecchio based on its discovery of the above alleged misappropriation of client funds. However, Orecchio continues to own 50% of AA Capital, and also has an equity interest in its affiliated private equity funds. In addition, Oliver and Stevens continue to maintain their management positions at AA Capital.

29.     Thus far, neither AA Capital nor Orecchio have repaid the misappropriated funds to AA Capital's clients.

## COUNT I

### AA Capital's Violations of Section 206(1) of the Advisers Act

30.     Paragraphs 1 through 29 are realleged and incorporated by reference.

31.     AA Capital, an investment adviser, by use of the mails or the means or instrumentalities of interstate commerce, directly or indirectly, employed a device, scheme, or artifice to defraud a client or prospective client.

32.     AA Capital acted knowingly or recklessly in connection with the above described conduct.

33.     By reason of the foregoing, AA Capital violated Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT II

### AA Capital's Violations of Section 206(2) of the Advisers Act

34.     Paragraphs 1 through 33 are realleged and incorporated by reference.

35.    AA Capital, an investment adviser, by use of the mails or the means or instrumentalities of interstate commerce, directly or indirectly, engaged in a transaction, practice or course of business which operated as a fraud or deceit upon a client or prospective client.

36.    By reason of the foregoing, AA Capital violated Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

**COUNT III**

**AA Capital's Violations of Section 206(4) of the Advisers Act
and Rule 206(4)-4 Thereunder**

37.    Paragraphs 1 through 36 are realleged and incorporated by reference.

38.    AA Capital, an investment adviser, by use of the mails or the means or instrumentalities of interstate commerce, directly or indirectly, engaged in an act, practice, or course of business which is fraudulent, deceptive and manipulative as those terms have been defined by the Commission by rules and regulations, including Advisers Act Rule 206(4)-4 [17 C.F.R. § 275.206(4)-4].

39.    AA Capital failed to disclose to its clients and prospective clients that its financial condition was and is reasonably likely to impair AA Capital's ability to meet its contractual commitment to its clients.

40.    By reason of the foregoing, AA Capital violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-4 thereunder [17 C.F.R. § 275.206(4)-4].

**COUNT IV**

**AA Capital's Violations of Section 204 of the Advisers Act**

41.    Paragraphs 1 through 40 are realleged and incorporated by reference.

42.    AA Capital, an investment adviser that makes use of the mails or of any means or instrumentality of interstate commerce in connection with its business as an investment adviser, failed to make or keep for prescribed periods such records (as defined in section 3(a)(37) of the Securities Exchange Act of 1934[15 U.S.C. § 78c]), furnish such copies thereof, and make and disseminate such reports as the Commission, by rule (including Advisers Act Rules 204-2(a)(1), 204-2(a)(2) and 204-2(a)(6) [17 C.F.R. §§ 275. 204-2(a)(1), 204-2(a)(2) and 204-2(a)(6)]), has prescribed as necessary or appropriate in the public interest or for the protection of investors.

43.    AA Capital, an investment adviser registered with the Commission, failed to make and keep true, accurate and current the following books and records relating to its investment advisory business: (1) A journal or journals, including cash receipts and disbursements, records, and any other records of original entry forming the basis of entries in any ledger; (2) general and auxiliary ledgers (or other comparable records) reflecting asset, liability, reserve, capital, income and expense accounts; and (3) all trial balances, financial statements, and internal audit working papers relating to the business of such investment adviser.

44.    By reason of the foregoing, AA Capital violated Section 206-4 of the Advisers Act [15 U.S.C. § 80 b-4] and Rules 204-2(a)(1), 204-2(a)(2) and 204-2(a)(6) thereunder [17 C.F.R. §§ 275. 204-2(a)(1), 204-2(a)(2) and 204-2(a)(6)].

## COUNT V

### Orecchio's Aiding and Abetting of
### AA Capital's Violations of Sections 206(1) and 206(2) of the Advisers Act

45.    Paragraphs 1 through 44 are hereby realleged and incorporated by reference herein.

46.    AA Capital, aided and abetted by Orecchio, and by use of the mails or the means or instrumentalities of interstate commerce, directly or indirectly, employed a device, scheme, or artifice to

defraud a client or prospective client, engaged in a transaction, practice or course of business which operated as a fraud or deceit upon a client or prospective client.

47.    AA Capital, aided and abetted by Orecchio, and by use of the mails or the means or instrumentalities of interstate commerce, directly or indirectly, engaged in a transaction, practice or course of business which operated as a fraud or deceit upon a client or prospective client.

48.    By reason of the foregoing, AA Capital violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

49.    Orecchio knowingly provided substantial assistance to AA Capital in the violations alleged above in paragraphs 30 to 36.

50.    By reason of the conduct alleged above, Orecchio aided and abetted AA Capital's violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that the Court:

### I.

Find that defendant AA Capital violated Sections 204, 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-4, 80b-6(1), 80b-6(2) and 80b-6(4)] and Rules 204-2(a)(1), 204-2(a)(2), 204-2(a)(6), and 206(4)-4 thereunder [17 C.F.R. §§ 275.204-2(a)(1), 275.204-2(a)(2), 275.204-2(a)(6)and 275.206(4)-4].

### II.

Find that defendant Orecchio aided and abetted AA Capital's violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**III.**

Enter orders temporarily, preliminarily, and a final judgment permanently, restraining and enjoining defendant AA Capital and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of such orders by personal service or otherwise, from, by use of the mails or any means of interstate commerce, directly or indirectly:

(1)    employing any device scheme, or artifice to defraud any client or prospective client;

(2)    engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client;

(4)    engaging in any act, practice, or course of business which is fraudulent, deceptive, or manipulative

in violation of Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)] and Rule 206(4)-4 [17 C.F.R. § 275.206(4)-4] promulgated thereunder. [17 C.F.R. § 275.206(4)-4]

**IV.**

Enter orders temporarily, preliminarily, and a final judgment permanently, restraining and enjoining defendant Orecchio, and his agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of such orders by personal service or otherwise, from aiding and abetting violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

**V.**

Enter an order that prevents defendants AA Capital and Orecchio, and each of defendants' financial institutions, officers, agents, servants, employees, attorneys, and those persons in active concert

11

or participation with defendants who receive actual notice of such order by personal service, facsimile service, service in accordance with any order of this Court, or otherwise, from withdrawing, transferring, selling, pledging, encumbering, assigning, dissipating, concealing or otherwise disposing of in any manner any funds, assets, accounts or other property belonging to, or directly or indirectly in the possession, custody or control of the defendants, or in which the defendants have a beneficial interest, wherever located.

## VI.

Enter an order prohibiting the defendants and their officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them from destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books, records, or other documents belonging to, or directly or indirectly in the possession, custody or control of defendants, in whatever form, including electronic, and wherever located.

## VII.

Enter an order directing that each of the defendants file with this Court and serve upon the Commission within five (5) business days a verified written accounting, signed by the defendants, for: (1) all assets, funds and property received, directly or indirectly, from anyone who invested in AA Capital or any similar agreement, or otherwise gave, directly or indirectly, assets, funds or property to the defendants; (2) the amount of such funds or value of such assets; (3) the location of where such funds were put; (4) the uses to which such funds were put; and (5) the amounts of any remaining assets or funds and their location.

**VIII.**

Enter an order appointing a receiver to marshal and preserve and manage the assets of defendant AA Capital.

**VIII.**

Enter an order requiring defendants AA Capital and Orecchio to pay an appropriate civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

**IX.**

Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may hereby be entered; or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

**X.**

Grant such other and further relief as may be necessary and appropriate.

Dated this 7th day of September, 2006.

Respectfully submitted,

John J Sikora, Jr., Ill. Bar No. 6217330
Robert M. Moye, Ill. Bar No. 6225688
Christopher S. Shearer, Ill. Bar No. 6243873
Attorneys for Plaintiff
Securities and Exchange Commission
175 W. Jackson Boulevard
Suite 900
Chicago, Illinois 60604-2615
312-353-7390